IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| BELLSOUTH TELECOMMUNICATIONS, LLC,<br>    *Plaintiff*,<br><br>v.<br><br>LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT,<br>    *Defendant*. | Civil No. 3:16-CV-00124-TBR |

# **DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS RULE 12(b)(1) AND 12(b)(6) MOTION TO DISMISS**

Defendant Louisville/Jefferson County Metro Government ("Louisville Metro") submits this memorandum in support of its motion to dismiss Plaintiff BellSouth Telecommunications, LLC's ("BellSouth") Complaint for Declaratory and Injunctive Relief ("DN 1"). As demonstrated more fully below, BellSouth's federal preemption claim ("First Claim for Relief") is not properly before the Court because there is no private right of action under 47 U.S.C. § 224 or the Supremacy Clause, nor does this Court have equitable jurisdiction over that claim. BellSouth's state law claims ("Second Claim for Relief" and "Third Claim for Relief") should be dismissed because BellSouth has not plausibly pled diversity jurisdiction under 28 U.S.C. § 1332, instead asserting only in conclusory fashion that the "amount in controversy exceeds $75,000." DN 1, ¶ 4. Because BellSouth has not alleged any proper federal claim and because it has not plausibly pled federal diversity jurisdiction, the Court should decline to exercise supplemental jurisdiction over BellSouth's state law claims and dismiss this action as a whole.

I. **PLAINTIFF'S FIRST CLAIM FOR RELIEF MUST BE DISMISSED BECAUSE THERE IS NO PRIVATE CAUSE OF ACTION UNDER 47 U.S.C. § 224, THE SUPREMACY CLAUSE OR THIS COURT'S EQUITABLE JURISDICTION.**

A cause of action exists only where the "plaintiff is a member of the class of litigants that may, as a matter of law, appropriately invoke the power of the court." *Davis v. Passman*, 442 U.S. 228, 239-40 n.18 (1979). That is not the case here. BellSouth's First Claim for Relief alleges that the Louisville Metro Ordinance[1] at issue is preempted pursuant to the Supremacy Clause[2] because it "is inconsistent with . . . 47 U.S.C. § 224 and the pole attachment regulations promulgated by the FCC." DN 1, ¶ 21. The only two federal district courts to have addressed this issue have held that there is no private cause of action under 47 U.S.C. § 224. *Va. Elec. & Power Co. v. Comcast of Va., Inc.*, 2010 U.S. Dist. LEXIS 21441, at *11-12 (D. Va. Mar. 8, 2010); *Kan. City Power & Light Co. v. Am. Fiber Sys.*, 2003 U.S. Dist. LEXIS 20983 (D. Kan. Nov. 5, 2003).[3] There is no sound basis for this Court to conclude otherwise.

Moreover, BellSouth's reliance on the Supremacy Clause is also misplaced, because "the Supremacy Clause does not confer a right of action." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015). And because 47 U.S.C. § 224 provides for FCC enforcement of the agency's pole attachment regulations, BellSouth cannot "invok[e] [this Court's] equitable powers [to] circumvent Congress's [express scheme] of [FCC administrative] enforcement." *Armstrong*, 135 S. Ct. at 1385.

---

[1] Louisville/Jefferson County Metro Gov't, Ordinance No. 021, Series 2016 (Feb. 25, 2016) ("Ordinance"). A copy of the Ordinance as adopted is attached as Exhibit 1. The copy of the ordinance attached to BellSouth's Complaint is a draft version. *See* DN 1-2.

[2] U.S. Const., Article VI, Section 2.

[3] Copies of each electronically available and unpublished decision cited herein are attached as Exhibit 2.

2

### A.     *There Is No Express or Implied Right of Action Under 47 U.S.C. § 224.*

There is no express cause of action under 47 U.S.C. § 224 to enforce judicially the FCC's pole attachment regulations. Congress enacted the Pole Attachment Act in 1978,[4] and amended it in 1982, 1984, 1994, and 1996, but never provided a private cause of action. *Va. Elec. & Power Co.*, 2010 U.S. Dist. LEXIS 21441, at *11-12; *Kan. City Power & Light Co.*, 2003 U.S. Dist. LEXIS 20983, at *9-10.

Nor is there an implied right of action under § 224. The exclusive inquiry in ascertaining whether Congress impliedly created a private cause of action "is to interpret the statute Congress has passed." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). The absence of an express cause of action under 47 U.S.C. § 224 weighs heavily, if not conclusively, against the finding of an implied cause of action. *See, e.g., Mich. Corr. Org. v. Mich. Dept. of Corr.*, 774 F.3d 895, 905 (6th Cir. 2014) ("Finding no express private right of action, *Sandoval* and *Brunner* concluded that Congress did not intend to permit private enforcement of the statute, whether through an implied right of action, [42 U.S.C.S.] § 1983, or *Ex parte Young*" (citing *Sandoval*, *Brunner v. Ohio Republican Party*, 555 U.S. 5 (2008)).

When Congress has intended to create private rights of action under the Communications Act of 1934, as amended, it has done so explicitly. *See, e.g.,* 47 U.S.C. §§ 207, 252(e)(6), 258(b), 274(e), 332(c)(7)(B)(v), and 555. Congress's failure to do so in Section 224 therefore points decisively against implying any private right of action.

Further informing the task of statutory analysis here is the Supreme Court's repeated admonishment that "the 'express provision of one method of enforcing a substantive rule

---

[4] The Pole Attachment Act was codified at 47 U.S.C. § 224, as an amendment to the Communications Act of 1934, as amended, 47 U.S.C. §§ 151-620.

3

suggests that Congress intended to preclude others.'" *Armstrong*, 135 S. Ct. at 1385 (quoting *Sandoval*, 532 U.S. at 290). In Section 224, "Congress commanded the FCC to establish a regulatory scheme to settle pole attachment disputes." *Kan. City Power & Light Co.*, 2003 U.S. Dist. LEXIS 20983, at *9. Section 224 therefore creates an administrative scheme of enforcement that "precludes a finding of congressional intent to create a private right of action." *Sandoval*, 532 U.S. at 290. "Congress created jurisdiction in the FCC to settle utility pole disputes and provided the States the option of preempting the FCC; Congress did not intend to create a private cause of action." *Kan. City Power & Light Co.*, 2003 U.S. Dist. LEXIS 20983, at *10.

Section 224(b) authorizes and directs the FCC to promulgate rules to regulate the rates, terms, and conditions of pole attachments, implement administrative complaint procedures, and "take such action as [the FCC] deems appropriate and necessary" to "enforce[] any determinations resulting from [the] complaint procedures established pursuant to [§ 224(b)]." Section 224(b) provides that:

> (1) Subject to the provisions of subsection (c) of this section,[5] the Commission shall regulate the rates, terms, and conditions for pole attachments to provide that such rates, terms, and conditions are just and reasonable, and shall adopt procedures necessary and appropriate to hear and resolve complaints concerning such rates, terms, and conditions. For purposes of enforcing any determinations resulting from complaint procedures established pursuant to this subsection, the Commission shall take such action as it deems appropriate and necessary, including issuing cease and desist orders, as authorized by section 312(b) of this title.

---

[5] Subsection (c) of Section 224 provides that Section 224 shall not apply to, nor does it give the FCC jurisdiction with respect to, pole attachment rates, terms, and conditions where a state has certified to the FCC that it regulates pole attachment rates, terms, and conditions. Kentucky has so certified to the FCC. *States That Have Certified That They Regulate Pole Attachments*, Public Notice, WC Docket No. 10-101, 25 FCC Rcd 5541 (WCB 2010). Thus, although the Court need not reach the issue here, BellSouth's First Claim for Relief is subject to dismissal on this additional ground as well.

>(2) The Commission shall prescribe by rule regulations to carry out the provisions of this section.

There is nothing in Section 224 that remotely evidences any intent to permit BellSouth to challenge in district court the consistency of the Ordinance with "the pole attachment regulations promulgated by the FCC." DN 1, ¶ 21. To the contrary, Congress expressly and exclusively committed to the FCC responsibility for enforcing the federal pole attachment regulations that Section 224 requires the FCC to adopt, subject to judicial review in the courts of appeals.[6]

**B.     *There Is No Private Right of Action Under the Supremacy Clause.***

In addition to "47 U.S.C. § 224 and the pole attachment regulations promulgated by the FCC," DN 1, ¶ 21, the only other source of federal law identified in BellSouth's First Claim for Relief is the Supremacy Clause, *i.e.*, "Article VI, Section 2 of the Constitution of the United States." DN 1, ¶ 21. BellSouth's invocation of the Supremacy Clause, however, does not provide it with a private right of action: The Supreme Court squarely held last term that "the Supremacy Clause . . . certainly does not create a cause of action." *Armstrong*, 135 S. Ct. at 1383. *See id.* at 1384 ("the Supremacy Clause does not confer a right of action.").

**C.     *47 U.S.C. § 224 Impliedly Forecloses An Original Action For Equitable Relief Before This Court.***

BellSouth cannot sue in this Court to enjoin the Ordinance as inconsistent with the FCC's pole attachment regulations or obtain kindred declaratory relief, because that would improperly "circumvent Congress's" statutory scheme of administrative remedial enforcement. *Armstrong*, 135 S. Ct. at 1385. The circumstances here accord in full with Supreme Court's analysis in *Armstrong*. There, the Supreme Court found evidence of Congress's intent to foreclose equitable

---

[6] "The FCC's implementing regulations cannot provide a private right of action that Congress did not expressly or impliedly create through legislative action." *Va. Elec. & Power Co.*, 2010 U.S. Dist. LEXIS 21441, at *15.

5

relief where the federal statute at issue provided an express administrative relief process based upon a "judgment-laden standard" entrusted to the Secretary of Health and Human Services:

> Explicitly conferring enforcement of this judgment-laden standard upon the Secretary [of Health and Human Services] alone establishes, we think, that Congress "wanted to make the agency remedy that it provided exclusive," thereby achieving "the expertise, uniformity, widespread consultation, and resulting administrative guidance that can accompany agency decisionmaking," and avoiding "the comparative risk of inconsistent interpretations and misincentives that can arise out of an occasional inappropriate application of the statute in a private action."

*Id.* (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 292 (2002) (Breyer, J., concurring in judgment).

The Supreme Court's reasoning in *Armstrong* applies with full force here. In Section 224, Congress charged the FCC both with establishing and adjudicating the just and reasonable rates, terms, and conditions of pole attachments.[7] This FCC-based scheme of administrative relief in Section 224 "establish[es] Congress's 'intent to foreclose' equitable relief." *Armstrong*, 135 S. Ct. at 1385 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 647 (2002)).

Because there is no cause of action under 47 U.S.C. § 224, nor any equitable basis to adjudicate BellSouth's federal preemption claim, this Court is without jurisdiction to grant BellSouth the declaratory relief it seeks in its First Claim. When a court cannot adjudicate the underlying right of action, "it lacks jurisdiction over a related declaratory judgment action as well." *Mich. Corr. Org.*, 774 F.3d at 903. *See also id.* at 904; *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950).

---

[7] The only exception is where a state has certified to the FCC that it has adopted its own pole attachment rules. As noted above, Kentucky has certified to the FCC that it regulates pole attachments. *See note* 5 *supra*. But for present purposes the point is that, where the FCC pole attachment rules do apply (as BellSouth's First Claim for Relief erroneously alleges they do), only the FCC—*not* the courts—can enforce, and adjudicate issues under, those rules.

Therefore, as a matter of law, BellSouth's First Claim for Relief is not properly before the Court and must be dismissed.

## II. BELLSOUTH HAS NOT PLAUSIBLY PLED DIVERSITY JURISDICTION IN SUPPORT OF ITS SECOND AND THIRD CLAIMS FOR RELIEF.

BellSouth alleges diversity jurisdiction in support of its state law-based Second and Third Claims for Relief, *i.e.,* respectively, that the Ordinance intrudes upon the jurisdiction of the Kentucky Public Service Commission ("Kentucky PSC"), and that the Ordinance exceeds Louisville Metro's authority under Kentucky law. In an effort to satisfy the $75,000 amount-in-controversy requirement of 28 U.S.C. § 1331, BellSouth alleges that "the economic value of the rights AT&T seeks to protect exceeds $75,000, and if relief is denied AT&T will suffer losses in excess of $75,000." DN 1, ¶ 4.

BellSouth's conclusory allegations supporting diversity jurisdiction are insufficient. The Supreme Court has addressed "the pleading standard [of] Rule 8" of the Federal Rules of Civil Procedure and held that a complaint must be dismissed "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). That is an apt description of BellSouth's amount-in-controversy assertions.

To be sure, the issue in *Iqbal* and *Twombly* was the adequacy of plaintiffs' allegations under Fed. R. Civ. P. 8(a)(2), rather than jurisdictional allegations under Fed. R. Civ. P. 8 (a)(1). Both this Circuit and other federal courts, however, have applied the *Iqbal* and *Twombly* pleading standards to a complaint's jurisdictional allegations. *Palnik v. Westlake Entm't, Inc.*, 344 F. App'x 249, 251 (6th Cir. 2009) (in deciding motion to dismiss for lack of personal jurisdiction, "the complaint must have 'established with reasonable particularity' those specific facts that

7

support jurisdiction" (citations omitted)); *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (allegations of personal jurisdiction subject to *Twombly*); *Wood v. Maguire Auto., LLC*, 508 F. App'x 65, 65 (2d Cir. 2013) (affirming dismissal of complaint for lack of subject matter jurisdiction because conclusory allegation of amount in controversy was not entitled to presumption of truth). As one court observed:

> Rule 8 of the Federal Rules of Civil Procedure imposes dual requirements in very similar terms that a plaintiff set forth the basis both for jurisdiction as well for a substantive claim. *Compare* Fed. R. Civ. P. 8(a)(1) (requiring "a short and plain statement of the ground for the court's jurisdiction"), *with* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). It would be "highly incongruous to require separate pleading standards for two subsections of the same rule," especially considering that "the factual nature of the claims surrounding the grounds for jurisdiction are, more often than not, intertwined with the factual allegations showing that the pleader is entitled to relief."

*Lapaglia v. Transamerica Cas. Ins. Co.*, No. 3:15-cv-0616 (JAM), 2016 U.S. Dist. LEXIS 320, at *5-6 (D. Conn. Jan. 4, 2016) (dismissing complaint for lack of plausible allegations supporting requirement of amount in controversy under 28 U.S.C. § 1332) (quoting *Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, 775 F. Supp. 2d 790, 798-99 (D. Md. 2011)).

For purposes of deciding a motion to dismiss, *Iqbal* directs the court "to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. at 679. The court is to then focus on the remaining "well-pleaded factual allegations . . . [to] determine whether they plausibly give rise to an entitlement to relief." *Id.*

Applying that standard here, it is beyond reasonable dispute that the Complaint's allegations concerning the amount in controversy are conclusory and do not satisfy the *Iqbal* and

*Twombly* pleading requirements. BellSouth's amount-in-controversy allegations in their totality are as follows:

> The amount in controversy exceeds $75,000. Among other things, the economic value of the rights AT&T seeks to protect exceeds $75,000, and if relief is denied AT&T will suffer losses in excess of $75,000.

DN 1, ¶ 4.

What, then, of BellSouth's factual allegations elsewhere in its complaint? To the extent that BellSouth alleges specific harm traceable to the Ordinance, it would appear to be either *de minimis* or highly speculative and uncertain. At paragraph 14 of its Complaint, BellSouth complains about the possible "seiz[ur]e" and "relocation" of its property, lack of notice to "minimiz[e]" "any potential for harm to its network – and the continuity and quality of service to its customers," and being "hampered in locating and correcting [network] trouble" "in the event there is network trouble." With the exception of the alleged "temporary seiz[ur]e of [its] property," paragraph 14 is most remarkable for what is <u>not</u> alleged: any reasonably likely injury to BellSouth or invasion of its rights in any respect.

This is not surprising. As the complaint itself alleges, the "vast majority" of the utility poles at issue "are owned by either AT&T or Louisville Gas and Electric [Company]." DN 1, ¶ 10. Although the Ordinance affords a third-party "Attacher" (such as Google Fiber) the right under certain circumstances to move BellSouth's facilities on these poles for purposes of attaching its own, the Attacher may only use "Pole Owner approved contractors" to move BellSouth's facilities. Exh. 1, Ordinance, Section II (D)(2). It defies credibility to suppose that either BellSouth itself, or Louisville Gas and Electric ("LG&E"), would approve substandard contractors to move BellSouth's facilities on their poles. No pole-owning utility permits third parties to access its poles and do work on its poles unless the pole owner is reasonably certain

9

that the third party is properly qualified to do such work. BellSouth does not, and cannot plausibly, allege that a BellSouth or LG&E "approved contractor" is somehow inherently likely to cause injury to BellSouth's facilities, let alone injuries or damages of over $75,000.

With respect to its own poles, BellSouth cannot plausibly claim injury resulting from the Ordinance for facility attachments and relocations, because the Ordinance gives BellSouth control over the designation of "approved contractors" eligible to perform such work.

Nor can BellSouth plausibly claim any reasonable likelihood of substantial injury resulting from the Ordinance for facility attachments and relocations of its facilities on LG&E's poles. LG&E is a highly regulated company. Pursuant to KRS 278.042, it must construct and maintain its facilities in accordance with the National Electrical Safety Code ("NESC").[8] NESC Rule 420.C.4 requires LG&E's employees and contractors to take into account issues of safety and the property of others in all of their actions. NESC Rule 430 provides additional regulations governing communications workers.

LG&E's history of compliance is noteworthy. Pursuant to Kentucky PSC regulation, LG&E is required to report to the PSC all accidents, property damage or loss of service involving:

> (a) Death or shock or burn requiring medical treatment at a hospital or similar medical facility, or any accident requiring inpatient overnight hospitalization;
>
> (b) Actual or potential property damage of $25,000 or more; or
>
> (c) Loss of service for four (4) or more hours to ten (10) percent or 500 or more of the utility's customers, whichever is less.
>
> (2) A summary written report shall be submitted by the utility to the commission within seven (7) calendar days of the utility related accident. For good cause shown, the executive director of

---

[8] Inst. of Elec. & Elec. Eng'rs, *National Electrical Safety Code* (2012 ed.).

10

> the commission, shall, upon application in writing, allow a reasonable extension of time for submission of this report.

807 KAR 5:0006, § 27. It appears that LG&E has never been sanctioned in the last ten years for failure to comply with KRS 278.042 and the NESC in an incident involving property damage of $25,000 or more, or involving "[l]oss of service for four (4) or more hours to ten (10) percent or 500 or more of the utility's customers, whichever is less."[9] Unlike BellSouth, LG&E is not challenging the Ordinance. It apparently sees no concern arising from its approved contractors relocating BellSouth's facilities on its poles in order to accommodate additional fiber communications lines.

With regard to BellSouth's allegation of the supposed potential for temporary "seizure" of its facilities, its claims for damages are almost certainly nominal. *See Ellison v. R & B Contracting, Inc.*, 32 S.W.3d 66 (Ky. 2000) (property owner entitled to only nominal damages in case of trespass where there is no proof of actual damage).

---

[9] The Kentucky PSC has disciplined LG&E six times in the last ten years for violations of the NESC that resulted in employee or contractor personal injury. Five of these cases are wholly irrelevant because they involve injuries from employees or contractors working directly on energized electric power facilities. *In the Matter of Louisville Gas and Electric Co. Alleged Failure to Comply With KRS 278.042*, Order Case No. 2012-00103 (Aug. 22, 2012), http://psc.ky.gov/order_vault/Orders_2012/201200103_08222012.pdf; *In the Matter of Louisville Gas and Electric Co. Alleged Failure to Comply With KRS 278.042*, Order Case No. 2011-00098 (July 26, 2011), http://psc.ky.gov/order_vault/Orders_2011/201100098_07262011.pdf; *In the Matter of Louisville Gas and Electric Co. Alleged Failure to Comply With KRS 278.042*, Order Case No. 2011-00097 (July 22, 2011), http://psc.ky.gov/order_vault/Orders_2011/201100097_07222011.pdf; *In the Matter of Louisville Gas and Electric Co. Alleged Failure to Comply With KRS 278.042*, Order Case No. 2009-00210 (Jan. 6, 2010), http://psc.ky.gov/order_vault/Orders_2010/200900210_01062010.pdf; *In the Matter of Louisville Gas and Electric Co. Alleged Failure to Comply With KRS 278.042*, Order Case No. 2009-00014 (May 27, 2009), http://psc.ky.gov/order_vault/Orders_2009/200900014_05272009.pdf. BellSouth's telecommunications facilities are located in the communications space on a pole, below the pole's electric power space where electric power lines, transformers and related energized electrical power facilities are located. Critically, the Ordinance does not permit "approved contractors" to work in a pole's electric power space, *i.e.,* on "facilities located above the 'Communication Worker Safety Zone.'"  Exh. 1, Ordinance, Section II (D)(2). The sixth incident involved contractor work on an electric light pole which came in contact with energized power lines. *In the Matter of Louisville Gas and Electric Co. Alleged Failure to Comply With KRS 278.042*, Order Case No. 2006-00084 (June 16, 2006), http://psc.ky.gov/order_vault/Orders_2006/200600084_06162006.pdf. The Order and settlement in the street light matter makes no reference to property loss or service outages.

This Court is charged with the "context-specific task" of assessing BellSouth's alleged injuries, "draw[ing] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. It need not accept implausible, or overly conclusory, allegations as true. Nothing that BellSouth has alleged in the Complaint "allows the court to draw the reasonable inference," *id.* at 678, that BellSouth will suffer economic loss in excess of $75,000 where, on its face, the Ordinance at issue makes clear that only BellSouth-approved or LG&E-approved contractors would be permitted to relocate BellSouth's facilities in order to attach the facilities of another provider.

### III. THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER BELLSOUTH'S SECOND AND THIRD CLAIMS FOR RELIEF.

BellSouth also seeks to invoke supplemental jurisdiction over its state law claims, *i.e.*, the Second and Third Claims for Relief. DN 1, ¶ 3. "As a general matter, a court will decline supplemental jurisdiction if the underlying [federal] claims are dismissed before trial." 13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3567.3 at 429 (2008). *See also* 28 U.S.C. § 1367(c)(3); *Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 849 (6th Cir. 2012). As we have shown above, all of BellSouth's federal claims should be dismissed: its federal preemption claim (First Claim for Relief) fails because neither Section 224 nor the Supremacy Clause provides a private cause of action, and its diversity jurisdiction claims (Second and Third Claims for Relief) should be dismissed for failure to plausibly plead federal diversity jurisdiction. Consistent with the general rule, the Court should therefore decline to exercise supplemental jurisdiction and dismiss this action as a whole.

BellSouth's claims simply do not belong in federal court. If BellSouth believes that the Ordinance is contrary to 47 U.S.C. § 224 or the FCC's rules, then it should file a petition before the FCC. As for BellSouth's state law challenges, they should be resolved in state court. The

Ordinance was adopted pursuant to KRS 278.040(2) and 82.082. Exh. 1, Ordinance at 1. It is for a Kentucky court to determine whether the Ordinance is a proper exercise of Louisville Metro's police powers to regulate its rights-of-way or instead impermissibly intrudes on the jurisdiction of the Kentucky PSC. This Court should not embroil itself in those internal state law allocation-of-authority issues.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint for Declaratory and Injunctive Relief.

Respectfully submitted,

/s/ *Tillman L. Lay*
Tillman L. Lay
Peter J. Hopkins
Spiegel & McDiarmid LLP
1875 Eye Street, N.W.
Suite 700
Washington, DC  20006
(202) 879-4000
Tim.lay@spiegelmcd.com
Peter.hopkins@spiegelmcd.com

MICHAEL J. O'CONNELL
Jefferson County Attorney

Matthew J. Golden
Director, Civil Division
531 Fiscal Court Place, 9th Floor
Louisville, Kentucky 40202
502-574-6333
502-574-6039 (fax)
502-574-6347 (direct)
matt.golden@louisvilleky.gov

April 15, 2016