UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BELLSOUTH TELECOMMUNICATIONS,
LLC,                                                                                    Plaintiff,

v.                                                                    Civil Action No. 3:16-cv-124-DJH

LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT, et al.,                                              Defendants.

\* \* \* \* \*

# MEMORANDUM OPINION AND ORDER

This case centers on a dispute over access to utility poles in Louisville, Kentucky. In February 2016, the Louisville Metro Council enacted a "one-touch make-ready" ordinance outlining new procedures for the installation of communications networks on utility poles in the city. Make-ready work generally consists of moving or rearranging existing wires and attachments on utility poles to make space for new attachments. One-touch make-ready policies, such as the one implemented by the Louisville Metro ordinance at issue here, seek to avoid delays by having all make-ready work performed at the same time by a single crew.

Plaintiff BellSouth Telecommunications, LLC (AT&T) disputes Defendant Louisville Metro's right to permit new users of utility poles to rearrange existing attachments on the poles in order to complete their own make-ready work. Pending before the Court are cross-motions for summary judgment. (Docket Nos. 40, 53) AT&T requests that the Court declare the ordinance unlawful and enjoin its enforcement. (D.N. 40-1, PageID # 384) Louisville Metro insists that the ordinance is a valid exercise of its authority to manage public rights-of-way. (D.N. 53-1, PageID # 498) The Court heard oral argument on the cross-motions on April 25, 2017. (D.N. 84; D.N. 85) Because the Court concludes that the ordinance is within Louisville Metro's

1

authority to manage public rights-of-way, Louisville Metro's motion for summary judgment will be granted and AT&T's motion for summary judgment will be denied.

## I. BACKGROUND

The following facts are set forth in the amended complaint, and are undisputed for purposes of the motions for summary judgment. AT&T is a telecommunications carrier that provides services in Louisville. (D.N. 49, PageID # 442) AT&T has invested millions of dollars to construct and maintain a communications network in Louisville. (*Id.*, PageID # 442–43) "A significant portion of AT&T's communications network in Louisville . . . consists of aerial telephone lines and associated equipment placed upon utility poles in the public rights-of-way." (*Id.*, PageID # 443) The majority of the poles used by AT&T are owned by either AT&T or Louisville Gas & Electric (LG&E). (*Id.*) AT&T has had a contract with LG&E for joint use of the utility poles since 1917. (*Id.*)

Chapter 116 of the Louisville Metro Code of Ordinances contains regulations for the construction, maintenance, and operation of cable communications systems. In February 2016, the Louisville Metro Council passed an ordinance amending these regulations. *See* Louisville Metro Ordinance No. 21, Series 2016. (D.N. 49-1) Before discussing the substantive provisions of Ordinance No. 21, it is important to understand some of the key terms defined by the ordinance. An "Attacher" is "[a]ny person, corporation, or other entity or their agents or contractors seeking to permanently or temporarily fasten or affix any type of equipment, antenna, line or facility of any kind to a utility pole in the right of way or its adjacent ground space." (D.N. 49-1, PageID # 453–54) A "Pre-Existing Third Party User" is "[t]he owner of any currently operating facilities, antenna, lines or equipment on a pole or its adjacent ground space in the right of way." (D.N. 49-1, PageID # 454) A "Pole Owner" is "[a] person, corporation or

entity having ownership of a pole or similar structure in the right of way to which utilities . . . are located." (*Id.*)

Ordinance No. 21 provides that an "Attacher may relocate or alter the attachments or facilities of any Pre-Existing Third Party User as may be necessary to accommodate Attacher's Attachment using Pole Owner approved contractors." (*Id.*, PageID # 455) The Attacher may do so without notice to the Pre-Existing Third Party User if the Attacher "will not effectuate a relocation or alteration of a Pre-Existing Third Party User's facilities that causes or would reasonably be expected to cause a customer outage." (*Id.*) The Attacher must notify the Pre-Existing Third Party User within thirty days of completing the work. (*Id.*) The Pre-Existing Third Party User and Pole Owner then have fourteen days to conduct an inspection at the Attacher's expense. (*Id.*)

AT&T challenges these provisions. According to AT&T, Ordinance No. 21 permits an Attacher to "seize AT&T's property, and to alter or relocate AT&T's property, without AT&T's consent and, in most circumstances, without prior notice to AT&T." (D.N. 49, PageID # 444) AT&T claims that this deprives it of "the opportunity to assess the potential for network disruption caused by the alteration or relocation, and to specify and oversee the work on AT&T's own facilities to ensure any potential for harm to its network . . . is minimized." (*Id.*) Due to the thirty-day notification period, AT&T alleges that it "may be hampered in locating and correcting" any network trouble caused by an Attacher's alteration or relocation of AT&T's facilities. (*Id.*)

AT&T seeks a declaratory judgment that: (1) the Kentucky Public Service Commission has exclusive jurisdiction to regulate pole attachments under Kentucky law; (2) the ordinance exceeds Louisville Metro's authority under Kentucky law; and (3) the ordinance is preempted by

federal law.  (*Id.*, PageID # 446–48)  AT&T also requests a permanent injunction restraining Louisville Metro from enforcing the ordinance or authorizing any third parties to act pursuant to the ordinance.  (*Id.*, PageID # 450)

AT&T argues that Kentucky law deprives Louisville Metro of any authority to override the federal pole-attachment regulations and instead vests that authority in Kentucky's Public Service Commission.  (*Id.*, PageID # 445)  In support of this argument, AT&T points to Ky. Rev. Stat. § 278.040(2), which states that "[t]he commission shall have exclusive jurisdiction over the regulation of rates and service of utilities."  But the statute goes on to say that "nothing in this chapter is intended to limit or restrict the police jurisdiction, contract rights or powers of cities or political subdivisions."  Ky. Rev. Stat. § 278.040(2).  Louisville Metro argues that the latter provision recognizes and preserves cities' police powers, giving it authority to enact the ordinance at issue. (D.N. 53-1, PageID # 498)

AT&T also argues that the ordinance is a "drastic departure from, and conflict[s] with," regulations promulgated by the Federal Communications Commission (FCC).  (D.N. 49, PageID # 445)  The Federal Communications Act of 1934 permits the FCC to "regulate the rates, terms, and conditions for pole attachments to provide that such rates, terms, and conditions are just and reasonable."  47 U.S.C. § 224(b)(1).  But Louisville Metro argues, and the FCC agrees, that the FCC's pole-attachment regulations do not apply in Kentucky.  (D.N. 53-1, PageID # 490; D.N. 68-1, PageID # 928)

## II. STANDARD

In order to grant a motion for summary judgment, the Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying the

4

basis for its motion and the parts of the record that demonstrate an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies this burden, the non-moving party must point to specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "[O]n cross-motions for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 692 (6th Cir. 2001) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). Here, the parties agree that the cross-motions for summary judgment are based upon legal argument. (D.N. 40-1, PageID # 386; D.N. 53-1, PageID # 485)

### III. DISCUSSION

#### A.

The first issue for the Court to consider is whether Louisville Metro had the authority to enact Ordinance No. 21 in light of the Public Service Commission's jurisdiction under Ky. Rev. Stat. § 278.040(2). Stated another way, what is the extent of the Public Service Commission's jurisdiction, and when must the Public Service Commission's jurisdiction give way to a city's police powers? In its motion for summary judgment, AT&T argues that the ordinance is invalid under Kentucky law because (1) Kentucky law grants the Public Service Commission exclusive jurisdiction to regulate pole attachments; (2) the ordinance, which regulates pole attachments, exceeds Louisville Metro's authority; and (3) Louisville Metro failed to adhere to its own requirements in enacting the ordinance. (D.N. 40-1, PageID # 387–89, 392) Louisville Metro asserts that the ordinance is valid under Kentucky law because (1) it falls within the city's police power to manage public rights-of-way and (2) AT&T's statewide franchise grants Louisville

specific authority to regulate AT&T's equipment and manage public rights-of-way. (D.N. 53-1, PageID # 498, 504) Because the Court agrees with Louisville Metro that the ordinance falls within the city's police powers, it need not consider the latter argument.

Louisville Metro enacted Ordinance No. 21 pursuant to Ky. Rev. Stat. § 82.082, which grants a city the right to exercise "any power and perform any function within its boundaries . . . that is in furtherance of a public purpose of the city and not in conflict with a constitutional provision or statute." Ky. Rev. Stat. § 82.082(1). Despite this broad grant of authority, Kentucky's Public Service Commission retains "exclusive jurisdiction over the regulation of rates and services of utilities." Ky. Rev. Stat. § 278.040(2). "Rate" is defined as

> any individual or joint fare, toll, charge, rental, or other compensation for service rendered or to be rendered by any utility, and any rule, regulation, practice, act, requirement, or privilege in any way relating to such fare, toll, charge, rental, or other compensation, and any schedule or tariff or part of a schedule or tariff thereof.

Ky. Rev. Stat. § 278.010(12). "Service" is defined as

> any practice or requirement in any way relating to the service of any utility, including the voltage of electricity, the heat units and pressure of gas, the purity, pressure, and quantity of water, and in general the quality, quantity, and pressure of any commodity or product used or to be used for or in connection with the business of any utility, but does not include Voice over Internet Protocol (VoIP) service.

Ky. Rev. Stat. § 278.010(13). Generally, the term "service" has been interpreted "to apply to and comprehend 'quality' and 'quantity' of the product to be served." *Benzinger v. Union Light, Heat & Power Co.*, 170 S.W.2d 38, 41 (Ky. 1943). In *Kentucky CATV Association v. Volz*, the Kentucky Court of Appeals stated that "[t]he term 'service' not only includes the basic services for which a utility is created, but it also includes any service which arises from the use of a utility's facilities, such as its poles." 675 S.W.2d 393, 396 (Ky. Ct. App. 1983). *Volz* involved pole-attachment agreements between cable television operators and utility companies. *See id.* at

6

394. The *Volz* court held that the rates charged for pole attachments and pole attachments themselves are exclusively regulated by the Public Service Commission. *Id.* at 396. The *Volz* court reasoned that "[t]he amount paid for the use of space on the poles" is a "rate" within the meaning of § 278.010(12). *Id.* The court further found that "the utilities are clearly providing a 'service' to cable TV when they allow CATV operators to attach their cables to unused space on an existing utility pole." *Id.*

The Public Service Commission's jurisdiction over rates and services, however, is subject to one important limitation. The statute provides that "[t]he commission shall have exclusive jurisdiction over the regulation of rates and service of utilities, *but with that exception nothing in this chapter is intended to limit or restrict the police jurisdiction, contract rights or powers of cities or political subdivisions*." Ky. Rev. Stat. § 278.040(2) (emphasis added). The Kentucky Supreme Court has interpreted this sentence to mean that "the legislature has conferred upon cities an exemption from the [Public Service Commission]'s power to regulate local utilities in every area except as to rates and service." *Simpson Cty. Water Dist. v. City of Franklin*, 872 S.W.2d 460, 462 (Ky. 1994). "That language is an express limitation upon the powers of the commission, with a like preservation of the power and authority of municipalities theretofore possessed by them, from the time our state was admitted into the Union." *Peoples Gas Co. of Ky. v. City of Barbourville*, 165 S.W.2d 567, 570 (Ky. 1942) (holding that the similarly-worded predecessor statute preserved the right of cities to create a utility franchise setting initial rates, terms, and conditions).

AT&T argues that Ordinance No. 21 impermissibly regulates the terms and conditions of pole attachments, irrespective of its impact on the use of public rights-of-way. (D.N. 88, PageID # 1171) To support this argument, AT&T relies heavily on *Volz*, but *Volz* provides no guidance

7

on the issues of whether and to what extent the Public Service Commission's exclusive jurisdiction must yield to a city's police powers. *See Volz*, 675 S.W.2d at 396 ("[T]here is no issue of 'police power' in this case."). AT&T also suggests that *Insight Kentucky Partners II, L.P. v. Louisville/Jefferson County Metro Government*, No. 3:16-cv-625-CRS, 2017 WL 1193065 (W.D. Ky. Mar. 30, 2017), which dealt with a similar challenge to Ordinance No. 21, resolves the matter here. (D.N. 81, PageID # 1089; D.N. 85, PageID # 1137) However, *Insight* is not dispositive. There, at the motion-to-dismiss stage, Judge Simpson observed that "the definition of 'service' as used in Kentucky Revised Statute § 278.040 is broad"; he concluded that "the activity of moving utility pole attachments, which [Ordinance No. 21] purports to regulate, plausibly falls within this definition." *Insight*, 2017 WL 1193065, at *8. But Judge Simpson was only evaluating whether the plaintiff adequately pleaded its claim. Here, for purposes of summary judgment, the Court concludes that regulating public rights-of-way is an express purpose of the ordinance. *See* Louisville Metro Ordinance No. 21, Series 2016 (referring to "Metro Government's proposed regulation of its rights of ways as set forth herein"). Therefore, *Insight* is not applicable here.

Furthermore, the *Benzinger* case makes clear that the Public Service Commission's jurisdiction under § 278.040(2) cannot limit a city's authority to manage its rights-of-way. That case concerned an ordinance enacted by the city of Covington, Kentucky, requiring public utilities to place wires underground and remove utility poles from the streets. *Benzinger*, 170 S.W.2d at 39. Union Light, Heat and Power Company provided electricity services in Covington and utilized utility poles to transmit electricity throughout the city. *Id.* Like AT&T here, Union filed suit, arguing that § 278.040 deprived the city of authority to enact and enforce the ordinance

at issue and placed such authority within the exclusive jurisdiction of the Public Service Commission. *Id.*

The *Benzinger* court first analyzed the constitutional rights of cities. *Id.* at 40. The Kentucky Constitution states that

> [n]o street railway, gas, water, steam heating, telephone, or electric light company, within a city or town, shall be permitted or authorized to construct its tracks, lay its pipes or mains, or erect its poles, posts or other apparatus along, over, under or across the streets, alleys or public grounds of a city or town, without the consent of the proper legislative bodies or boards of such city or town being first obtained.

Ky. Const. § 163. The court interpreted this language to "give[] constitutional authority to municipalities to control the manner whereby a utility may occupy its public streets and other owned property with required facilities for distribution of its product." *Benzinger*, 170 S.W.2d at 40. Next, the court analyzed the language of § 278.040, concluding that it was the legislature's intent "to confer jurisdiction only over the matter of rates and services," and that it was not the legislature's intent to deprive municipalities of their constitutional authority by enacting the statute. *Id.* at 41. The court held that

> in light of the wording of the involved statute, and in view of the upsetting effect it would have on long continued exercise of authority by municipalities in promoting local self-government, the enactment of the statute under consideration was not a preemption of the field of municipal authority over its public streets, alleys and property so as to deny to it the right to choose for itself the method or manner of encumbering or placing burdens on such public owned property over which it has exclusive jurisdiction.

*Id.* at 41–42. Thus, § 278.040(2) does not deprive municipalities of the authority to manage their rights-of-way even when utilities are involved.

AT&T narrowly characterizes Ordinance No. 21 as one that regulates pole attachments. (D.N. 40-1, PageID # 389) But the ordinance actually prescribes the "method or manner of encumbering or placing burdens on" public rights-of-way. *Benzinger*, 170 S.W.2d at 41. The

ordinance mandates a one-touch make-ready approach, and a one-touch make-ready approach inherently regulates public rights-of-way because it reduces the number of encumbrances or burdens placed on public rights-of-way. (*See* D.N. 53-2, PageID # 519) It is undisputed that make-ready work can require blocking traffic and sidewalks multiple times to permit multiple crews to perform the same work on the same utility pole. (*Id.*) The one-touch make-ready ordinance requires that all necessary make-ready work be performed by a single crew, lessening the impact of make-ready work on public rights-of-way. (*Id.*) Louisville Metro has an important interest in managing its public rights-of-way to maximize efficiency and enhance public safety. (*Id.*, PageID # 520) And Kentucky law preserves the right of cities to regulate public rights-of-way. *Benzinger*, 170 S.W.2d at 41–42. Because Ordinance No. 21 regulates public rights-of-way, it is within Louisville Metro's constitutional authority to enact the ordinance, and § 278.040(2) cannot limit that authority. *See id.* at 41–42.

Having concluded that Louisville Metro possessed the authority to enact Ordinance No. 21, the Court will briefly address AT&T's argument that the ordinance is invalid because Louisville Metro failed to adhere to its own requirements when it enacted the ordinance. (D.N. 40-1, PageID # 392) Section 10.16(A) of the Louisville Metro Code states that "[i]f the Metro Council shall desire to amend any existing chapter or section of this Code, the chapter or section shall be specifically repealed and a new chapter or section, containing the desired amendment, substituted in its place."

Louisville Metro maintains that the ordinance is valid and that the Metro Council fully complied with § 10.16(A) when enacting the ordinance. (D.N. 54, PageID # 683) The Metro Council uses the "strike-through and underscoring method" of amending the municipal Code, which identifies both the language to be repealed and the new language to be added. (*Id.*) This

10

is the longstanding practice of the Metro Council when enacting ordinances that amend the Code. (*Id.*; *see also* D.N. 53-3) AT&T has failed to show how this method is inconsistent with the requirements of § 10.16(A). Therefore, the Court cannot conclude that Ordinance No. 21 is invalid on these grounds.

**B.**

AT&T argues that even if the ordinance is permissible under state law, it is "inconsistent with and preempted by federal law." (D.N. 40-1, PageID # 393) The FCC has authority to regulate rates, terms, and conditions of pole attachments and promulgate rules and regulations to that effect. *See* 47 U.S.C. § 224(b). While Ordinance No. 21 imposes requirements that are different from the FCC's regulations, AT&T's federal preemption argument fails as a matter of law because the FCC regulations at issue do not apply in Kentucky.

In 1978, the Communications Act of 1934 was amended to include a section regulating pole attachments, but this section contained a reverse-preemption provision that deprives the FCC of jurisdiction in certain situations. Section 224(c) states:

> (1) Nothing in this section shall be construed to apply to, or to give the Commission jurisdiction with respect to rates, terms, and conditions, or access to poles, ducts, conduits, and rights-of-way as provided in subsection (f) of this section, for pole attachments in any case where such matters are regulated by a State.
>
> (2) Each State which regulates the rates, terms, and conditions for pole attachments shall certify to the Commission that—
>
> (A) it regulates such rates, terms, and conditions; and
>
> (B) in so regulating such rates, terms, and conditions, the State has the authority to consider and does consider the interests of the subscribers of the services offered via such attachments, as well as the interests of the consumers of the utility services.

47 U.S.C. § 224(c).

The FCC has explained that it "retains jurisdiction over pole attachments *only in states that do not so certify*." *In re Implementation of Section 224 of the Act*, 26 FCC Rcd. 5240, 5243 ¶ 7 (2011) (emphasis added); s*ee also MCI Telecomms. Corp. v. N.Y. Tel. Co.*, 134 F. Supp. 2d 490, 503–04 (N.D.N.Y. 2001) (finding that FCC rulings and regulations are non-binding when a state has certified pursuant to § 224(c) that it regulates pole attachments); *Heritage Cablevision Assocs. of Dallas, L.P.*, 6 FCC Rcd. 7099, 7101 n.14 (1991) ("Any state regulation of the rates, terms and conditions for pole attachments governs over federal regulation of pole attachments in that state. . . . [T]he [FCC]'s mandate is to fill the regulatory vacuum created when individual states do not regulate pole attachments."); *cf. Pub. Serv. Co. of Colo. v. FCC*, 328 F.3d 675, 678 (D.C. Cir. 2003) (finding that FCC regulations apply when there are no state regulations). Indeed, even the *Volz* decision, upon which AT&T relies for its state-law argument, determined that federal regulations were inapplicable because "the Kentucky statutes authorize the Public Service Commission to exercise jurisdiction over pole attachment agreements with utilities in Kentucky." *Volz*, 675 S.W.2d at 397.

The United States has filed a statement of interest on behalf of the FCC, pursuant to 28 U.S.C. § 517, which permits the United States to "submit a statement in a case expressing its views on relevant issues in which it has an interest." *Wortman v. All Nippon Airways*, 854 F.3d 606, 617 (9th Cir. 2017). (D.N. 68) The FCC explains in its statement that some states may opt out of the federal pole-attachment regulations by invoking the reverse-preemption provision of 47 U.S.C. § 224(c). (D.N. 68-1, PageID # 927) A state that opts out of federal regulations must certify to the FCC that it regulates rates, terms, and conditions for pole attachments. (*Id.*) According to the FCC, Kentucky is a reverse-preemption state, and therefore federal pole-attachment regulations do not apply in Kentucky. (*Id.*, PageID # 928) The FCC posits that

AT&T is thus "wrong to assert a conflict with the federal pole attachment rules in these circumstances." (*Id.*, PageID # 929) The Court agrees.

AT&T argues that if the ordinance is outside the scope of the Public Service Commission's jurisdiction, as the Court has concluded, then the reverse-preemption provision does not supplant the FCC's regulations. (D.N. 72, PageID # 1052) But this argument is inconsistent with how other courts and the FCC have interpreted § 224(c). *See In re Implementation of Section 224 of the Act*, 26 FCC Rcd. at 5243; *MCI Telecomms. Corp.*, 134 F. Supp. 2d at 503–04; *Heritage Cablevision Assocs. of Dallas, L.P.*, 6 FCC Rcd. at 7101 n.14. AT&T has provided no authority indicating that FCC regulations continue to apply to matters outside the exclusive jurisdiction of the Public Service Commission. The reverse-preemption provision merely requires a state to certify that it regulates "rates, terms, and conditions" for pole attachments. 47 U.S.C. § 224(c)(2)(A). If a state so certifies, the reverse-preemption provision deprives the FCC of jurisdiction over "rates, terms, and conditions, or access to poles, ducts, conduits, and rights-of-way . . . for pole attachments" in that state. 47 U.S.C. § 224(c)(1). Kentucky has invoked the reverse-preemption provision by certification pursuant to § 224(c), effectively opting out of the FCC's pole-attachment regulations. *States That Have Certified That They Regulate Pole Attachments*, 25 FCC Rcd. 5541 (2010). Therefore, FCC regulations enacted under § 224 do not apply in Kentucky, and AT&T's preemption claim fails.

## IV. CONCLUSION

Having found that Ordinance No. 21 falls within Louisville Metro's authority to manage its rights-of-way, and therefore outside the exclusive jurisdiction of the Public Service Commission, the Court concludes that the ordinance is valid and that Louisville Metro is entitled

to summary judgment.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Plaintiff AT&T's motion for summary judgment (D.N. 40) is **DENIED** and Defendant Louisville Metro's motion for summary judgment (D.N. 53) is **GRANTED**.  A separate judgment will be entered this date.

August 16, 2017

**David J. Hale, Judge**
**United States District Court**